FILED

2019 SEP 12  PM 2: 23

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CAL.
LOS ANGELES

BY: _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>DR. N. VAHEDI PHARMACY INC.,<br>   dba "FUSION RX COMPOUNDING<br>   PHARMACY,"<br>NAVID VAHEDI, and<br>JOSEPH S. KIEFFER,<br><br>          Defendants. | CR No. 2:19-CR-00531-CAS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to<br>Commit Mail Fraud, Wire Fraud,<br>Health Care Fraud, and Pay Illegal<br>Remuneration; 18 U.S.C. § 1343:<br>Wire Fraud; 18 U.S.C. § 1347:<br>Health Care Fraud; 18 U.S.C.<br>§ 1028A(a)(1): Aggravated Identity<br>Theft; 42 U.S.C. § 1320a-<br>7b(b)(2)(B): Payment of Illegal<br>Remunerations; 18 U.S.C.<br>§ 1956(h): Conspiracy to Commit<br>Money Laundering; 18 U.S.C. § 2:<br>Aiding and Abetting and Causing an<br>Act to Be Done; 18 U.S.C. §§ 981,<br>982, and 1028 and 28 U.S.C.<br>§ 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   GENERAL ALLEGATIONS

At times relevant to this Indictment:

1.   Defendant DR. N. VAHEDI PHARMACY, INC., doing business as

FUSION RX Compounding Pharmacy ("defendant FUSION RX"), was a pharmacy located at 2001 Westwood Boulevard, Suite A, Los Angeles, California 90025, within the Central District of California. Defendant FUSION RX operated primarily as a multi-state mail order pharmacy with the vast majority of its revenue derived from filling and refilling, by mail, prescriptions for compounded medications. Defendant FUSION RX maintained a business bank account at JP Morgan Chase Bank, with an account number ending in 4586 (the "FUSION RX Chase Account").

2.   Defendant NAVID VAHEDI was a resident of Los Angeles, California, within the Central District of California, who had owned and operated defendant FUSION RX since its formation in or about February 2009.  Defendant VAHEDI maintained a personal savings account at JP Morgan Chase bank, with an account number ending in 7865 ("VAHEDI's Personal Chase Account").

3.   Defendant JOSEPH S. KIEFFER, a resident of Los Angeles, California, owned and operated J. Sheridan Enterprises, Inc.; Sheridan Foundation, Inc.; and Joseph S. Kieffer, DBA Sheridan Medical (collectively, "Sheridan Medical"), all three of which were formed in California in or about 2011.  Sheridan Medical served as an intermediary between defendant FUSION RX and individuals referred to as "marketers."  Defendant KIEFFER, through Sheridan Medical, would pay percentage-based commission payments to marketers to generate and steer prescriptions for compounded drugs to defendant FUSION RX. Defendant VAHEDI, through defendant FUSION RX, would reimburse defendant KIEFFER, through Sheridan Medical, for these referral payments.  Defendant KIEFFER maintained a checking account at First Bank, with an account number ending in 6385 ("KIEFFER's First Bank

Account").

4.    PHIRX LLC ("PHIRX") was a Utah corporation formed on or about May 15, 2014, to "market" compounded drugs to physicians.  Co-conspirator Joshua Pearson ("Pearson") owned and operated PHIRX, which generated and steered prescriptions for compounded drugs to defendant FUSION RX, in exchange for payments defendant KIEFFER made through Sheridan Medical.

Compounded Drugs

5.    "Compounding" was a practice in which a licensed pharmacist or a licensed physician combined, mixed, or altered ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient.  Compounded drugs were not approved by the United States Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs and such formulations were not "FDA-approved."

6.    Compounded drugs were prescribed by a physician generally when an FDA-approved drug did not meet the health needs of a particular patient.  For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction.  Compounded drugs would also be prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or a child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.  Because compounded medications were generally intended to be tailored to the needs of specific patients, the reimbursement rates for compounded medications were often higher than those of FDA-approved medications.

3

TRICARE

7.     TRICARE provided health care benefits, items, and services to Department of Defense beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

8.     TRICARE provided health care benefits for certain prescription drugs, including certain compounded drugs, that were medically necessary and prescribed pursuant to TRICARE rules and regulations.

Medicare

9.     Medicare provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services.

10.    To participate in Medicare, providers, including pharmacies, were required to submit applications in which the providers agreed to comply with all Medicare-related laws and regulations, including the federal anti-kickback statute (42 U.S.C. § 1320a-7b(b)) (the "Anti-Kickback Statute"), which proscribes the offering, payment, solicitation, or receipt of any remuneration in exchange for a patient referral or referral of other business for which payment may be made by any federal health care program.  If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for processing and paying claims.

11.    Medicare reimbursed providers for certain compounded drugs that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician or a

qualified physician's assistant acting under the supervision of a physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular service or product would be reimbursed by Medicare.

FEHBP

12.   The Federal Employees Health Benefits Program ("FEHBP") was a federally funded health care benefit program provided by the federal government to provide medical benefits, items, and services to federal employees, retirees, and their eligible spouses and dependent children.

13.   The FEHBP provided coverage for certain prescription drugs, including certain compounded drugs, that were medically necessary and prescribed by a licensed physician.  CVS Caremark, Inc. ("CVS") and Express Scripts administered FEHBP'S prescription drug benefits.

AMTRAK

14.   The National Railroad Passenger Corporation ("Amtrak") operated public train services throughout the United States.  The Amtrak health care plan reimbursed medical providers, including pharmacies (collectively, "providers"), that treated Amtrak health care plan participants, who were generally Amtrak employees.

15.   The Amtrak health care plan required providers to submit claim forms in order to receive reimbursement for medical services and items provided to Amtrak health care participants.  The Amtrak health care plan paid only medically necessary claims for patients covered under the health care plan.

16.   To encourage patients to receive cost-effective and medically necessary treatments, the Amtrak health care plan required participants to make payments toward their own health care in the

1  form of co-insurance, copayments, and deductibles.

2       17.  From on or about May 13, 2014, to at least June 2015, Aetna

3  Inc. ("Aetna") processed claims for Amtrak's health care plan.

4       Federal Health Care Programs

5       18.  TRICARE and Medicare, among others, were "federal health

6  care programs," as defined by 42 U.S.C. § 1320a-7b(f) (collectively,

7  the "Affected Federal Programs").

8       19.  The Affected Federal Programs, FEHBP, Amtrak, and private

9  insurance plans that ultimately reimbursed defendant FUSION RX for

10 dispensing compounded drug prescriptions, were "health care benefit

11 programs," as defined by 18 U.S.C. § 24(b), that affected commerce

12 (collectively, the "Affected Health Care Programs").

13      Pharmacy Benefit Managers

14      20.  A pharmacy benefit manager ("PBM") served as, among other

15 things, an intermediary between health care benefit programs,

16 pharmacies, and patient-beneficiaries.

17      21.  CVS, Express Scripts, and other PBMs (collectively, "the

18 Operative PBMs"), administered prescription drug benefits as the PBMs

19 for the Affected Health Care Programs.

20      22.  The Affected Health Care Programs provided coverage for

21 certain prescription drugs, including certain compounded drugs, that

22 were medically necessary and lawfully prescribed.  To effectuate this

23 coverage, the Affected Health Care Programs entered into agreements

24 with the Operative PBMs to administer prescription drug benefits

25 under the respective insurance plans.

26      23.  In turn, the Operative PBMs would develop and maintain a

27 network of pharmacies, which provided prescription drugs to

28 beneficiaries of the Affected Health Care Programs.  Entering into a

pharmacy provider agreement with the Operative PBMs would provide a contracting pharmacy access to myriad individual beneficiaries insured under the Affected Health Care Programs, by virtue of authorizing the pharmacy to submit health care claims for reimbursement in connection with dispensing prescription drugs to these beneficiaries. The Operative PBMs would pay these health care claims, and, in turn, the Affected Health Care Programs would reimburse the PBMs for the health care claims paid on behalf of the Affected Health Care Programs.

24. Based on these arrangements, beneficiaries filled their prescriptions through network pharmacies that contracted with the Operative PBMs. If a beneficiary chose a network pharmacy, the pharmacy was required to collect any applicable copayment from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to the applicable Operative PBM, which, in turn, would adjudicate the claim and reimburse the pharmacy. To be a network pharmacy with one of the Operative PBMs, a pharmacy agreed to be bound by, and comply with, all applicable state and federal laws and collect any applicable co-insurance, copayment, and/or deductible.

Coinsurance / Copayments

25. The Affected Health Care Programs and Operative PBMs, acting on behalf of the Affected Health Care Programs, relied on pharmacy providers to collect all applicable copayments from beneficiaries. The applicable network agreements confirmed that the collection of copayments was material to the Affected Health Care Programs and the Operative PBMs.

26.    On or about August 27, 2009, defendant VAHEDI, on behalf of defendant FUSION RX, executed a network agreement with CVS, which authorized defendant FUSION RX to submit claims for prescription drugs it dispensed to beneficiaries who had had health insurance plans that were part of the CVS network.  Similarly, on or about September 29, 2014, defendant VAHEDI, on behalf of defendant FUSION RX, executed a network agreement with Express Scripts, which authorized defendant FUSION RX to submit claims for prescription drugs it dispensed to beneficiaries who were part of the Express Scripts network, specifically including TRICARE beneficiaries.  Both of these agreements required defendant FUSION RX to collect patient copayments and prohibited defendant FUSION RX from waiving, discounting, or otherwise reducing patient copayments.

B.    OBJECTS OF THE CONSPIRACY

27.    Beginning on an unknown date, but no later than in or about March 2014, and continuing to at least September 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants FUSION RX, VAHEDI, and KIEFFER, along with others known and unknown to the Grand Jury, knowingly conspired to commit the following offenses against the United States:

a.    mail fraud, in violation of Title 18, United States Code, Section 1341;

b.    wire fraud, in violation of Title 18, United States Code, Section 1343;

c.    health care fraud, in violation of Title 18, United States Code, Section 1347; and

d.    knowingly and willfully offering to pay or paying any remuneration to any person (i) to induce such person to refer an

8

individual for the furnishing and arranging for the furnishing of any item or service, and (ii) to arrange for and recommend purchasing or ordering any good, service, or item, for which payment may be made in whole or in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

28.   The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

a.   Defendant VAHEDI, through defendant FUSION RX, using the FUSION RX Chase Account, and defendant KIEFFER, using KIEFFER's First Bank Account, would pay marketers to generate and steer prescriptions for compounded drugs (the "Kickback-Tainted Prescriptions") to defendant FUSION RX.

b.   Although defendant VAHEDI worked in concert with defendant KIEFFER to establish, calculate, and fund the kickbacks, in an attempt to circumvent the Anti-Kickback Statute, defendants VAHEDI and KIEFFER would take steps to conceal the connection and payments between defendant FUSION RX and marketers.  Specifically, defendant VAHEDI would pay the kickbacks to Sheridan Medical, knowing and intending that defendant KIEFFER would cause Sheridan Medical to in turn pay the marketers, including Pearson through his company PHIRX. Further, defendants VAHEDI and KIEFFER, and Pearson and other co-conspirators, would discuss (i) backdating and fabricating invoices to make it appear that defendant KIEFFER paid Pearson through PHIRX a flat-rate marketing fee rather than a payment based on the volume of Kickback-Tainted Prescriptions referred by Pearson to defendant FUSION RX, and (ii) terminating Pearson and PHIRX representatives as independent contractors so that they could instead be "hired" by

1  defendant FUSION RX as W-2 employees, in an effort to falsely

2  characterize Pearson's conduct as falling within a safe harbor of the

3  Anti-Kickback Statute.

4      c.  The kickback payments paid by defendant VAHEDI to

5  marketers, through Sheridan Medical, would be an agreed-upon,

6  marketer-specific percentage of the reimbursements defendant FUSION

7  RX would receive for dispensing the compounded medications based on

8  the Kickback-Tainted Prescriptions.

9      d.  In return for the kickbacks, marketers, including

10  Pearson, would:

11      i.  Solicit beneficiaries, often through the

12  provision of financial incentives, to request that their prescribing

13  physicians authorize prescriptions for compounded drugs; and/or

14      ii.  Solicit physicians to authorize prescriptions for

15  compounded drugs for beneficiaries, which often included providing

16  physicians with preprinted prescription scripts for compounded drug

17  combinations specifically selected to maximize the amount the

18  Affected Health Care Programs would reimburse defendant FUSION RX for

19  each dispensed compounded drug, without regard for the medical

20  efficacy or need for the compounded drug.

21      e.  Instead of providing the Kickback-Tainted

22  Prescriptions directly to beneficiaries, who would then be free to

23  select the pharmacy at which they would be filled, the marketers,

24  including Pearson, would deliver or cause the prescribing physicians

25  to deliver the Kickback-Tainted Prescriptions directly to defendant

26  FUSION RX for dispensing.

27      f.  Defendant FUSION RX would generally dispense the

28  compounded drugs identified in the Kickback-Tainted Prescriptions and

1    electronically submit to the Affected Health Care Programs, including

2    the Affected Federal Programs, exorbitant claims for reimbursement

3    for dispensing those high-priced drugs.

4         g.   After the claims for reimbursement were electronically

5    processed or adjudicated, defendants FUSION RX and VAHEDI, among

6    other co-conspirators, would cause the underlying compounded drugs to

7    be delivered by mail to beneficiaries of the Affected Health Care

8    Programs.

9         h.   Defendant VAHEDI, through defendant FUSION RX, would

10   cause reimbursements from the Affected Health Care Programs based on

11   the Kickback-Tainted Prescriptions to be deposited into the FUSION RX

12   Chase Account, and these funds would then be used to pay marketers to

13   induce the referral of additional Kickback-Tainted Prescriptions.

14        i.   In order to avoid discouraging beneficiaries from

15   filling the lucrative Kickback-Tainted Prescriptions at defendant

16   FUSION RX, defendants FUSION RX, VAHEDI, and KIEFFER, and Pearson,

17   would agree that defendant FUSION RX would not collect patient

18   copayments from the beneficiaries.

19        j.   Defendants FUSION RX and VAHEDI would falsely

20   represent and attempt to represent to the Operative PBMs and the

21   Affected Health Care Programs that defendant FUSION RX was, in fact,

22   collecting applicable copayments from patients, despite the co-

23   conspirators' explicit practice and understanding not to do so.

24        k.   Specifically, in or around late 2014, in response to

25   audits by the Operative PBMs, which, in part, sought to verify

26   defendant FUSION RX's collection of patient copayments, defendants

27   VAHEDI and KIEFFER, along with other co-conspirators, would devise a

28   plan to deceive the Affected Health Care Programs by making it appear

11

1    as though defendant FUSION RX was collecting all applicable

2    copayments from patients.

3           l.    For this purpose, defendant VAHEDI would purchase and

4    cause the purchase of batches of American Express ("AMEX") pre-paid

5    gift cards that would not be registered or tied to a specific

6    individual (the "Identity-Masked AMEX Gift Cards").  Defendant VAHEDI

7    would then load and cause the loading of over $100,000 onto the

8    Identity-Masked AMEX Gift Cards using funds from the FUSION RX Chase

9    Account.

10          m.    Without the knowledge or consent of the respective

11   patients, the Affected Health Care Programs, or the Operative PBMs,

12   defendant VAHEDI and other co-conspirators would use and cause the

13   Identity-Masked AMEX Gift Cards to be used at point-of-sale terminals

14   at defendant FUSION RX to satisfy patient copayment obligations

15   associated with the dispensing of compounded drugs that were billed

16   to the Affected Health Care Programs (the "Fraudulent Copayment

17   Arrangement").

18          n.    Defendants FUSION RX, VAHEDI, and KIEFFER, along with

19   other co-conspirators, would conceal the Fraudulent Copayment

20   Arrangement by creating records falsely showing that patients were

21   making these copayments.  These representations were material to the

22   Affected Health Care Programs and Operative PBMs, who would rely on

23   and consider these records in connection with pharmacy audits to

24   determine, in part, whether defendant FUSION RX was appropriately

25   collecting patient copayments.

26          o.    To further conceal the Fraudulent Copayment

27   Arrangement, defendant VAHEDI would also direct defendant KIEFFER and

28   Pearson to instruct the relevant patient-beneficiaries that, if the

1    patient-beneficiaries were asked by auditors whether they had paid

2    the copayments, the patient-beneficiaries should respond falsely that

3    they did so using a credit card and avoid specifying the credit card

4    they used for the payment.

5    D.   EFFECTS OF THE CONSPIRACY

6         29.  As a result of the Kickback-Tainted Prescriptions, between

7    in or about March 2014 and in or about February 2016, defendants

8    FUSION RX and VAHEDI would submit and cause the submission of claims

9    exceeding approximately $17,000,000 to health care benefit programs

10   and receive approximately $16,800,000 in reimbursements from the

11   Affected Health Care Programs, with at least approximately $3,303,110

12   of that amount coming from the Affected Federal Programs.

13        30.  Between in or about October 2013 and in or about February

14   2016, defendant VAHEDI, through defendant FUSION RX, transferred

15   approximately $8,424,665 to defendant KIEFFER, through Sheridan

16   Medical, for coordinating the generation and steering of

17   prescriptions for compounded drugs to defendant FUSION RX for

18   dispensing.  In turn, defendant KIEFFER, through Sheridan Medical,

19   paid Pearson, through PHIRX, approximately $5,428,019 for steering

20   the referral of prescriptions for compounded drugs to defendant

21   FUSION RX.  PHIRX generated over half of the compounded drug

22   prescriptions defendant FUSION RX dispensed.

23        31.  As part of the conspiracy, defendants VAHEDI and FUSION RX

24   paid and caused the payment of at least 525 fraudulent copayments

25   corresponding to compounded drug prescription reimbursement claims

26   submitted to the Affected Health Care Programs and, in turn, received

27   at least approximately $4,300,000 from the Affected Health Care

28   Programs.

E.   OVERT ACTS

32.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants FUSION RX, VAHEDI, and KIEFFER, and others known and unknown to the Grand Jury, committed, and caused others to commit, the following overt acts, among others, within the Central District of California, and elsewhere:

Overt Act No. 1:   On March 21, 2014, defendant VAHEDI sent a text message from his cell phone number ending in 9393 to defendant KIEFFER at his cell phone number ending in 4431, writing, "What if we charged copay to patient and sent them a gift card of equal value? Or should we stick with the attempt to bill method?"

Overt Act No. 2:   In April 2014, Pearson, through PHIRX, caused the generation and steering of prescriptions to defendant FUSION RX in exchange for referral payments of 35% of the amount the Affected Health Care Programs reimbursed on these prescriptions.

Overt Act No. 3:   On November 20, 2014, defendant VAHEDI purchased and caused the purchase of 104 Identity-Masked AMEX Gift Cards, using an AMEX business card that was linked to the FUSION RX Chase Account.

Overt Act No. 4:   On November 26, 2014, defendant VAHEDI used and caused the use of an Identity-Masked AMEX Gift Card, with a card number ending in 1400, to pay a $65.07 patient copayment for patient L.P. in connection with prescription number 132176, which resulted in a reimbursement of $18,238.53 to defendant FUSION RX, all or a portion of which was paid by Medicare.

Overt Act No. 5:   On December 2, 2014, defendant VAHEDI used and caused the use of an Identity-Masked AMEX Gift Card, with a card

number ending in 3193, to pay the $30 patient copayment in connection with prescription number 133115 involving compounded drugs for CVS beneficiary T.W., who was an Amtrak employee.

Overt Act No. 6:    On December 31, 2014, defendant VAHEDI caused CVS to issue check number 1008236225, in the amount of $146,210.85, which included a reimbursement for FUSION RX prescription number 133115, related to CVS beneficiary T.W., among other prescriptions and beneficiaries.

Overt Act No. 7:    On January 16, 2015, defendant KIEFFER and Pearson caused compounded drug prescription number 120203 for FEHBP beneficiary J.D. to be sent from a physician clinic, located in Eagle Mountain, Utah, to defendant FUSION RX for dispensing.

Overt Act No. 8:    On January 16, 2015, defendants VAHEDI and KIEFFER, along with Pearson, caused CVS to issue check number 1008301740, in the amount of $255,430.91, to defendant FUSION RX, related, in part, to prescription number 120203 and FEHBP beneficiary J.D.

Overt Act No. 9:    On January 27, 2015, defendant VAHEDI sent a text message from his cell phone number ending in 9393 to defendant KIEFFER at his cell phone number ending in 4431, writing:  "We need to talk about patches.  See the email I sent and keep in mind we aren't collecting copays."

Overt Act No. 10:    On February 3, 2015, defendant VAHEDI purchased and caused the purchase of 13 Identity-Masked AMEX Gift Cards, with funds drawn from the FUSION RX Chase Account.

Overt Act No. 11:    On February 12, 2015, defendant VAHEDI used and caused the use of an Identity-Masked AMEX Gift Card, with an AMEX card number ending in 4250, to pay a $200 patient copayment for

patient S.R. in connection with prescription number 128734, involving the provision of compounded drugs later reimbursed by FEHBP.

Overt Act No. 12:   On March 2, 2015, defendants VAHEDI and KIEFFER agreed with Pearson to increase the referral payments to Pearson from 35% to 45% of the amount the Affected Health Care Programs reimbursed on PHIRX-referred prescriptions.

Overt Act No. 13:   On March 5, 2015, defendant VAHEDI sent a SMS text message from his cell phone number ending in 9393 to defendant KIEFFER at his cell phone number ending in 4431, writing: "You have to make sure that all of [Pearson's] people say they paid a copay if asked."

Overt Act No. 14:   On March 6, 2015, defendant VAHEDI used and caused the use of an Identity-Masked AMEX Gift Card, with an AMEX card number ending in 8823, to pay the $17 patient copayment for patient D.G. in connection with prescription number 131882, involving the provision of compounded drugs reimbursed by TRICARE.

Overt Act No. 15:   On March 23, 2015, defendant VAHEDI purchased and caused the purchase of 33 Identity-Masked AMEX Gift Cards with funds drawn from the FUSION RX Chase Account.

Overt Act No. 16:   On March 30, 2015, defendant VAHEDI purchased and caused the purchase of 40 Identity-Masked AMEX Gift Cards with funds drawn from the FUSION RX Chase Account.

Overt Act No. 17:   On April 3, 2015, defendant VAHEDI used and caused the use of an Identity-Masked AMEX Gift Card with an AMEX card number ending in 1031 to pay a $755.21 patient copayment for patient G.F. in connection with prescription number 120566, involving the provision of compounded drugs reimbursed by FEHBP.

<u>Overt Act No. 18:</u>   On or about April 7, 2015, defendant VAHEDI used and caused the use of an Identity-Masked AMEX Gift Card, with an AMEX card number ending in 8461, to pay the $824.44 patient copayment for patient M.J. in connection with prescription number 19378, involving the provision of compounded drugs reimbursed by FEHBP.

<u>Overt Act No. 19:</u>   On April 22, 2015, defendant VAHEDI emailed defendant KIEFFER and Pearson with the subject line "Audit was today" and instructing them as follows:

>    "Please make sure that all your patients know to say that they did pay the copay and that they paid with credit card. If asked for a card number the response should be I don't remember which card I used or I don't have my wallet or purse with me."

<u>Overt Act No. 20:</u>   On March 10, 2015, defendant KIEFFER issued check number 2186, drawn on defendant KIEFFER's First Bank Account and bearing the memo "Jan Commissions," to PHIRX, in the amount of $470,937.25, which was a kickback payment.

<u>Overt Act No. 21:</u>   On September 25, 2016, defendant VAHEDI sent a text message from his cell phone number ending in 9393, to defendant KIEFFER at his cell phone number ending in 4431, writing:

>    "I'm thinking of ways to get around this and if it comes down to it we all have to say that any federally funded insurance program was not included in the payments or something like that but I can't say that if Josh and his people say something different."

COUNTS TWO AND THREE

[18 U.S.C. § 1343]

[ALL DEFENDANTS]

33.  The Grand Jury realleges and incorporates here paragraphs 1 through 26 and 28 through 32 of this Indictment.

A.  THE SCHEME TO DEFRAUD

34.  Beginning no later than in or around November 2014, and continuing through in or around April 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants FUSION RX, VAHEDI, and KEIFFER, together with Pearson and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the Operative PBMs and Affected Health Care Programs as to material matters, and to obtain money and property from the Affected Health Care Programs by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.  OPERATION OF THE SCHEME TO DEFRAUD

35.  The fraudulent scheme operated, in substance, as set forth in paragraphs 28(a) and 28(f) through 28(o) of this Indictment concerning the Fraudulent Copayment Arrangement.

C.  USE OF INTERSTATE WIRES

36.  On or about the following dates, within the Central District of California, and elsewhere, defendants FUSION RX, VAHEDI, and KEIFFER, along with Pearson and other co-schemers known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate commerce, as set forth below:

18

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|-------|------|------------------------------|
| TWO | 12/2/2014 | Claim submission of prescription #133115 for patient-beneficiary T.W. from defendant FUSION RX in Los Angeles, California, to CVS's prescription claims center and processing server located in Scottsdale, Arizona. |
| THREE | 1/16/2015 | Claim submission of prescription #120203 for patient-beneficiary J.D from defendant FUSION RX in Los Angeles, California, to CVS's prescription claims center and processing server located in Scottsdale, Arizona. |

COUNTS FOUR THROUGH EIGHT

[18 U.S.C. §§ 1347(a)(2), 2(b)]

[ALL DEFENDANTS]

37.   The Grand Jury realleges and incorporates here paragraphs 1 through 26 and 28 through 32 of this Indictment.

A.   THE SCHEME TO DEFRAUD

38.   Beginning on an unknown date, but no later than in or about November 2014, and continuing to in or about April 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants FUSION RX, VAHEDI, and KIEFFER, together with Pearson and others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice to obtain money from the Affected Health Care Programs by means of materially false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of, and payment for, health care benefits, items, and services.

B.   MEANS BY WHICH THE SCHEME TO DEFRAUD WAS TO BE ACCOMPLISHED

39.   The fraudulent scheme operated, in substance, as set forth in paragraphs 28(a) and 28(f) through 28(o) of this Indictment concerning the Fraudulent Copayment Arrangement.

C.   EXECUTIONS OF THE SCHEME TO DEFRAUD

40.   On or about the dates set forth below, within the Central District of California, and elsewhere, defendants FUSION RX, VAHEDI, and KIEFFER, along with Pearson and others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute the fraudulent scheme described above by:

///

Submission of False Claims to the Affected Health Care Programs

(a) submitting and causing to be submitted to the Affected Health Care Programs identified below, the following false and fraudulent compounded drug prescription claims, among others, which defendants FUSION RX, VAHEDI, and KIEFFER knew to be submitted under the false pretense that copayments had been collected from patient-beneficiaries:

| COUNT | PATIENT | AFFECTED HEALTH CARE PROGRAM | CLAIM SUBMISSION DATE | RX NUMBER | COPAY AMOUNT | AMOUNT AFFECTED HEALTH CARE PROGRAM PAID ON CLAIM |
|-------|---------|------------------------------|------------------------|-----------|--------------|--------------------------------------------------|
| FOUR  | T.W.    | AETNA                        | 12/2/2014              | 133115    | $30          | $854.96                                          |
| FIVE  | J.D.    | FEHBP                        | 1/16/2015              | 120203    | $91.22       | $273.64                                          |

Fraudulent Copayments Using Identify-Masked AMEX Gift Cards

(b) using and causing the use of Identity-Masked AMEX Gift Cards at point-of-sale terminals at defendant FUSION RX to conceal the fact that patient copayments associated with the dispensing of the compounded drug prescriptions identified below, among others, that were billed to the Affected Health Care Programs identified below, were collected from the following patients, when, in fact, defendants FUSION RX, VAHEDI, and KIEFFER knew that these patients and others had not made such copayments:

| COUNT | PATIENT | AFFECTED HEALTH CARE PROGRAM | DATE OF FRAUDULENT COPAY | RX NUMBER | COPAY AMOUNT | AMOUNT AFFECTED HEALTH CARE PROGRAM PAID ON CLAIM |
|-------|---------|------------------------------|---------------------------|-----------|--------------|--------------------------------------------------|
| SIX   | H.A.    | AETNA                        | 2/18/2015                 | 135656    | $150         | $467.93                                          |
| SEVEN | D.G.    | TRICARE                      | 3/6/2015                  | 131881    | $17          | $11,533.85                                       |
| EIGHT | D.G.    | TRICARE                      | 3/6/2015                  | 131882    | $17          | $7,547.99                                        |

COUNTS NINE THROUGH TWELVE

[42 U.S.C. § 1320a-7b(b)(2)(B); 18 U.S.C. § 2]

[ALL DEFENDANTS]

41.  The Grand Jury realleges and incorporates here paragraphs 1 through 26 and 28 through 32 of this Indictment.

42.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants FUSION RX, VAHEDI, and KIEFFER knowingly and willfully offered and paid, aided and abetted the offer and payment, and willfully caused to be offered and paid, remuneration, that is, checks payable in or about the amounts set forth below, for Pearson, through PHIRX, to arrange for and recommend purchasing and ordering goods, services, and items, namely, Kickback-Tainted Prescriptions for dispensing at defendant FUSION RX, for which payment could be made in whole and in part under a Federal health care program, including the Affected Federal Programs:

| COUNT | APPROXIMATE DATE | REMUNERATION |
| --- | --- | --- |
| NINE | 11/11/2014 | Check number 2091, drawn on defendant KIEFFER's First Bank Account, in the amount of $404,960.90, payable to PHIRX. |
| TEN | 1/12/2015 | Check number 2142, drawn on defendant KIEFFER's First Bank Account, in the amount of $469,287.00, payable to PHIRX. |
| ELEVEN | 3/20/2015 | Check number 2186, drawn on defendant KIEFFER's First Bank Account, in the amount of $470,937.25, payable to PHIRX. |
| TWELVE | 4/10/2015 | Check number 2212, drawn on defendant KIEFFER's First Bank Account, in the amount of $432,748.80, payable to PHIRX |

## COUNT THIRTEEN

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[ALL DEFENDANTS]

43. The Grand Jury realleges and incorporates here paragraphs 1 through 26 and 28 through 32, and 38 through 40 of this Indictment.

44. On or about February 18, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants FUSION RX, VAHEDI, and KIEFFER, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, namely, the name of Aetna patient-beneficiary H.A., during and in relation to Health Care Fraud, a felony violation of Title 18, United States Code, Section 1347, as charged in Count Six of this Indictment.

1              COUNT FOURTEEN

2           [18 U.S.C. § 1956(h)]

3            [ALL DEFENDANTS]

4       45.   The Grand Jury realleges and incorporates here paragraphs 1

5  through 26 and 28 through 32 of this Indictment.

6  A.   OBJECTS OF THE CONSPIRACY

7       46.   Beginning on an unknown date, but no later than in or about

8  October 2013, and continuing to at least in or about February 2016,

9  in Los Angeles County, within the Central District of California, and

10  elsewhere, defendants FUSION RX, VAHEDI, and KIEFFER, along with

11  others known and unknown to the Grand Jury, knowingly conspired to

12  commit the following offenses against the United States:

13            a.   Knowing that property involved in a financial

14  transaction represented the proceeds of some form of unlawful

15  activity, and which property was, in fact, the proceeds of specified

16  unlawful activity, namely, wire fraud, in violation of Title 18,

17  United States Code, Section 1343; health care fraud, in violation of

18  Title 18, United States Code, Section 1347; and illegal remuneration

19  for health care referrals, in violation of Title 42, United States

20  Code, Section 1320a-7b(b)(2)(B), conducting and attempting to conduct

21  financial transactions affecting interstate and foreign commerce

22  knowing that the transactions were designed in whole and in part to

23  conceal and disguise the nature, the location, the source, the

24  ownership, and the control of the proceeds of said unlawful activity,

25  in violation of Title 18, United States Code, Section

26  1956(a)(1)(B)(i); and

27            b.   Knowingly engaging and attempting to engage in

28  monetary transactions involving criminally derived property of a

                            24

value greater than $10,000, which property represented the proceeds

of specified unlawful activity, namely, wire fraud, in violation of

Title 18, United States Code, Section 1343; health care fraud, in

violation of Title 18, United States Code, Section 1347; and illegal

remuneration for health care referrals, in violation of Title 42,

United States Code, Section 1320a-7b(b)(2)(B), in violation of Title

18, United States Code, Section 1957(a).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

47.   The objects of the conspiracy were carried out, and to be

carried out, in substance, as follows:

a.   Marketers, acting at the direction of defendants

FUSION RX, VAHEDI, and KIEFFER, would steer Kickback-Tainted

Prescriptions to defendant FUSION RX for fulfillment.

b.   Defendants FUSION RX, VAHEDI, and KIEFFER would cause

Kickback-Tainted Prescriptions to be filled and billed the Affected

Health Care Programs.

c.   Defendants FUSION RX, VAHEDI, and KIEFFER would use

the insurance proceeds from the fulfillment of the Kickback-Tainted

Prescriptions to pay illegal kickbacks to marketers.

d.   To conceal the nature, location, source, ownership,

and control of the funds used to pay kickbacks to marketers, that is,

to hide the fact that defendant FUSION RX was effectively paying

marketers to steer prescriptions to it, defendant VAHEDI would cause

payments -- often exceeding $10,000 -- to be made from defendant

FUSION RX to defendant KIEFFER, through Sheridan Medical, who would

then make the kickback payments to marketers.

e.   Defendants VAHEDI and KIEFFER would use the remaining

insurance proceeds to make payments -- often exceeding $10,000 -- to

1  fund their personal lifestyles.

2  C.     OVERT ACTS

3      48.  On or about the following dates, in furtherance of the

4  conspiracy and to accomplish its objects, defendants FUSION RX,

5  VAHEDI, and KIEFFER, and others known and unknown to the Grand Jury,

6  committed, willfully caused to be committed, and aided and abetted

7  the commission of the following overt acts, among others, within the

8  Central District of California, and elsewhere:

9      Overt Act No. 1:   On June 5, 2014, defendants VAHEDI and

10  KIEFFER caused the deposit of check number 2004, drawn on the FUSION

11  RX Chase Account, in the amount of $462,096.63, into KIEFFER's First

12  Bank Account.

13     Overt Act No. 2:   On June 5, 2014, defendant VAHEDI caused

14  check number 2013, drawn on the FUSION RX Chase Account, in the

15  amount of $250,000, to be deposited in VAHEDI's Personal Chase

16  Account.

17     Overt Act No. 3:   On July 21, 2014, defendant VAHEDI caused

18  check number 2144, drawn on the FUSION RX Chase Account, in the

19  amount of $37,000, to be deposited into a bank account associated

20  with Levy Racing, Inc., representing a partial payment on defendant

21  VAHEDI's purchase of a 1963 Ford Mustang Cobra vehicle.

22     Overt Act No. 4:   On October 28, 2014, defendant VAHEDI caused

23  a transfer of $1,468,012 from VAHEDI's Personal Chase Account to an

24  escrow account in partial payment of the purchase price of his

25  residence located on Bonhill Road in Los Angeles, California.

26     Overt Act No. 5:   On November 11, 2014, defendant KIEFFER,

27  through Sheridan Medical, issued check number 2091, drawn on

28  KIEFFER's First Bank Account, in the amount of $404,967.90, to PHIRX.

<u>Overt Act No. 6:</u>    On November 26, 2014, defendants VAHEDI and KIEFFER caused the use of an Identity-Masked AMEX Gift Card, with a card number ending in 1400, to pay a $65.07 patient copayment for patient L.P. in connection with prescription number 132176, which resulted in a reimbursement of $18,238.53 to defendant FUSION RX, all or a portion of which was paid by Medicare.

<u>Overt Act No. 7:</u>    On December 31, 2014, defendant VAHEDI caused CVS to issue check number 1008236225, in the amount of $146,210.85, consisting of reimbursements for Kickback-Tainted Prescriptions.

<u>Overt Act No. 8:</u>    On September 29, 2015, defendants VAHEDI and KIEFFER caused the deposit of check number 3323, drawn on the FUSION RX Chase Account, in the amount of $137,054.18, into KIEFFER's First Bank Account.

1                    FORFEITURE ALLEGATION ONE

2              [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3        49.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Section 981(a)(1)(C) and Title 28, United States

7    Code, Section 2461(c), in the event of any defendant's conviction of

8    the offenses set forth in any of Counts One through Three of this

9    Indictment.

10       50.   Any defendant so convicted shall forfeit to the United

11   States of America the following:

12            (a)   all right, title, and interest in any and all

13   property, real or personal, constituting, or derived from, any

14   proceeds traceable to the offenses, including but not limited to the

15   following:

16            i.   The real property located at 510 N. Bonhill Rd.,

17   Los Angeles, CA  90049; and

18            ii.   The real property located at 12338 Sunset Park

19   Way, Los Angeles, CA  90064;

20            (b)   To the extent such property is not available for

21   forfeiture, a sum of money equal to the total value of the property

22   described in subparagraph (a).

23       51.   Pursuant to Title 21, United States Code, Section 853(p),

24   as incorporated by Title 28, United States Code, Section 2461(c), any

25   defendant so convicted shall forfeit substitute property, up to the

26   value of the property described in the preceding paragraph if, as the

27   result of any act or omission of said defendant, the property

28   described in the preceding paragraph or any portion thereof

                                 28

(a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

52. Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Four through Twelve of this Indictment.

53. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction, including but not limited to the following:

i. The real property located at 510 N. Bonhill Rd., Los Angeles, CA 90049; and

ii. The real property located at 12338 Sunset Park Way, Los Angeles, CA 90064; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

54. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of said defendant, the property described in the

30

preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. §§ 982 and 1028 and 28 U.S.C. §2461(c)]

55.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 1028 and Title 28, United States Code, Section 2461(c) in the event of any defendant's conviction of the offense set forth in Count Thirteen of this Indictment.

56.   Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including but not limited to the following:

i.   The real property located at 510 N. Bonhill Rd., Los Angeles, CA  90049; and

ii.   The real property located at 12338 Sunset Park Way, Los Angeles, CA  90064; and

(b)  Any personal property used or intended to be used to commit the offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

57.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1028(g), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said

1  defendant, the property described in the preceding paragraph, or any

2  portion thereof: (a) cannot be located upon the exercise of due

3  diligence; (b) has been transferred, sold to or deposited with a

4  third party; (c) has been placed beyond the jurisdiction of the

5  court; (d) has been substantially diminished in value; or (e) has

6  been commingled with other property that cannot be divided without

7  difficulty.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

58.  Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Fourteen of this Indictment.

59.  Any defendant so convicted shall forfeit to the United States of America the following:

(a)  Any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following:

i.  The real property located at 510 N. Bonhill Rd., Los Angeles, CA 90049; and

ii.  The real property located at 12338 Sunset Park Way, Los Angeles, CA 90064; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

60.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

1  jurisdiction of the court; (d) has been substantially diminished in

2  value; or (e) has been commingled with other property that cannot be

3  divided without difficulty. Substitution of assets shall not be

4  ordered, however, where the convicted defendant acted merely as an

5  intermediary who handled but did not retain the property in the

6  course of the money laundering offense unless the defendant, in

7  committing the offense or offenses giving rise to the forfeiture,

8  conducted three or more separate transactions involving a total of

9  $100,000.00 or more in any twelve-month period.

10

11                                    A TRUE BILL

12

13                                    /S/
                                      _____
14                                    Foreperson

15

16  NICOLA T. HANNA
    United States Attorney
17
    Scott M. Garringer
18  Deputy Chief, Criminal Division For:

19  BRANDON D. FOX
    Assistant United States Attorney
    Chief, Criminal Division
20

21  RANEE A. KATZENSTEIN
    Assistant United States Attorney
    Chief, Major Frauds Section
22

23  KRISTEN A. WILLIAMS
    Assistant United States Attorney
    Deputy Chief, Major Frauds Section
24

25  ASHWIN JANAKIRAM
    ALEXANDER B. SCHWAB
    Assistant United States Attorneys
26  Major Frauds Section

27

28